UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIDGET ANDERS<br><br>                    Plaintiff,<br><br>vs.<br><br>HARRIS & HARRIS, LTD.<br><br>                    Defendant. | Case No.   1:23-cv-3479<br><br>Honorable Judge<br><br>**COMPLAINT WITH JURY DEMAND** |

Now comes Plaintiff, Bridget Anders, and for her Complaint states and avers as follows:

1. This case involves an action for damages advanced by Bridget Anders, against Defendant, Harris & Harris, Ltd., for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA"), and Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (hereinafter "TCPA").

2. The FDCPA claim arises from multiple debt collection communications by Defendant. These communications came after Plaintiff instructed Defendant, in writing, to stop all further communication, which violated the FDCPA, 15 U.S.C. § 1692c(c). This case also advances a claim under the FDCPA, §1692g(b) for failure to properly validate the alleged debt upon written request by Plaintiff.

**THE FDCPA**

3. The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). This action advances the underlying purposes of

1

the FDCPA.

4. "While Congress appears to have intended the act to eliminate abusive collection practices, the language of 15 U.S.C. § 1692c(c) is broader: it not only states that a debt collector may not make a demand for payment following a cease-communication letter, but also prohibits communication of any kind …" *Lewis v. ACB Bus. Servs.,* 135 F.3d 389, 398 (6th Cir. 1998).

5. The FDCPA verification provision at 15 U.S.C. § 1692g(b) is designed to provide consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation.

6. Verification should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date.

7. Where a consumer properly disputes a debt in writing, the debt collector must suspend collection activities until it provides verification.

## THE TCPA

8. The TCPA claim arises from Defendant's placing debt collection telephone via text message and calls using an automatic telephone dialing system ("ATDS").

9. The violative calls and texts were placed after Ms. Anders instructed Defendant to cease all collection communications.

10. In 1991 Congress enacted the TCPA in response to a growing number of consumer complaints regarding unwanted calls.

11. The Federal Communications Commission ("FCC") has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers.

12. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that: [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. *Id.* at § 12.

13. "Voluminous consumer complaints about abuses of telephone technology--for example, computerized calls dispatched to private homes-- prompted Congress to pass the TCPA. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. The Act bans certain practices invasive of privacy…" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71, 132 S. Ct. 740, 744 (2012).

14. The transmission of an unsolicited text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's privacy. Moreover, such calls are an intrusion upon seclusion, diminish cellular battery life, and waste data storage capacity.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise out of violation of federal laws.

16. This Court has personal jurisdiction over Defendant as Defendant does business in this District. *See*, 28 U.S.C. § 1391(c)(2).

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as Defendant does business in this District and a substantial portion of the acts giving rise to the claims herein occurred in this District.

## PARTIES

18. Plaintiff, Bridget Anders, is a natural person and resident of Cook County, Ohio, within this District.

19. Plaintiff is a "consumer" as defined by the FDCPA.

20. At all relevant times, Plaintiff was the subscriber and sole user of the cellular telephone receiving the calls and texts that are the subject of the TCPA claim.

21. At all times relevant herein, Defendant, Harris & Harris, Ltd. is a company based in Cook County Illinois, within this District, and is authorized to conduct, and so conducts, business in this District, within the State of Illinois and throughout the country.

22. Defendant will be served through its authorized agent for service of process.

23. Defendant is a "debt collector," as defined by the FDCPA.

## BACKGROUND

24. Defendant's contacts via telephone calls and texts, and any other mode of communication, each constituted a "communication," as defined by the FDCPA.

25. Upon information and belief, Defendant attempted to collect an alleged "debt" wherein the original "creditor" is Northwestern Medicine, as those terms are defined by the FDCPA.

26. The alleged debt arose from services provided by the creditor, which were primarily for family, personal or household purposes, which satisfies the definition of a "debt" under 15 U.S.C. § 1692a(5).

27. The alleged debt was purchased, assigned, or transferred to Defendant for collection, or alternatively Defendant was employed by the creditor to collect the alleged debt.

28. On or about April to May 2022, Defendant begins dunning Plaintiff, utilizing collection telephone calls and letters.

29. On May 2, 2022, Plaintiff sent a letter to Defendant and requested full validation of

4

the alleged debt, and further requested Defendant cease and desist from any communication beyond such validation.

30. On May 26, 2022, Plaintiff instructed Defendant in writing to stop contacting her via her cellular phone number, providing said cellular phone number.

31. On multiple occasions on or after June 3, 2022, Defendant called and/or texted Plaintiff's cellular phone without prior express consent.

32. The telephone calls cause Plaintiff's cellular phone to ring, but Plaintiff does not answer the calls.

33. Plaintiff responds "STOP" to the text message sent by Defendant to Plaintiff on June 13, 2022.

34. The subject calls were not made for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

35. Plaintiff never provided prior express consent allowing Defendant to place telephone calls or text to her cellular phone; contrarily Plaintiff instructed Defendant not to call her on her cellular phone.

36. On or about July 14, 2022, Defendant sent a receipt from Northwestern Medicine, but failed to ever provide the detailed validation requested and required under the FDCPA.

37. The "verification" provided by Defendant did not include any information as to how the alleged debt was originally incurred, such as the nature of the transactions, but rather summarily included billing codes and abbreviates unknown to Plaintiff.

38. At all times relevant, Plaintiff has taken reasonable steps to mitigate her injuries by repeatedly disputing the alleged debt, repeatedly requesting verification of the alleged debt, and clearly instructing Defendant to cease all communication via her cellular phone, as well as any collection activity until Defendant provided verification of the alleged debt.

5

39. As a result of the continued communications, notwithstanding Plaintiff's instruction to stop, Plaintiff has suffered stress, anxiety, emotional distress, invasion of privacy, intrusion upon her seclusion, loss of enjoyment, and inability to be free of unwanted dunning by Defendant related to this alleged debt.

## COUNT I
## Violation of the FDCPA, 15 U.S.C. §§ 1692c(c) and 1692g(b)

40. Plaintiff hereby incorporates all other paragraphs as if fully restated herein.

41. This claim is for violation of the FDCPA by Defendant.

42. With limited exceptions, 15 U.S.C. § 1692c(c) prohibits debt collectors like Defendant from communicating with consumer if "a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer."

43. The limited exceptions set out under 15 U.S.C. § 1692c(c) do not apply to any of the communications at issue in this case.

44. Defendant also failed to validate the alleged debt pursuant to Plaintiff's request under 15 U.S.C. § 1692g(b).

45. Defendant's actions and inactions, as described herein, caused injury to Plaintiff.

46. Defendant acted with willful intent to injure Plaintiff.

47. At all times relevant, Defendant had substantial written materials that informed it of its duties and obligations under the FDCPA.

48. Despite knowing of their legal obligations, Defendant acted consciously in breaching its known duties, and depriving Plaintiff of her rights under the FDCPA.

49. The communications described herein were not the result of a bona fide error.

50. Defendant failed to maintain procedures adapted to avoid bona fide errors under the FDCPA.

## COUNT II
### Violation of the TCPA, 47 U.S.C. § 227(b)

51. Plaintiff restates and incorporates the foregoing allegations as if fully set forth herein.

52. Defendant used an ATDS to send text messages and make calls to the cellular telephone of Plaintiff.

53. Defendant placed the calls and sent the text messages after Plaintiff's written instruction to Defendant not to do so.

54. Defendant violated the TCPA by making said calls to Plaintiff without her prior express consent.

55. Because the calls were made after Plaintiff had instructed Defendant to "stop", the violations were willful or knowing.

56. As a result of Defendant's conduct, and pursuant to the TCPA, Plaintiff is entitled to a minimum of $500.00 in damages for each violation.

57. Because Defendant knew or should have known that Plaintiff had not given prior express consent to receive prerecorded voice calls to her cellular telephone – and/or willfully made prerecorded voice message to call the cell phones of Plaintiff without prior express – the Court should treble the amount of statutory damages available to Plaintiff pursuant to § 227(b)(3) of the TCPA.

58. Plaintiff suffered injury by Defendant's collection call. Her privacy was invaded, and she suffered aggravation and frustration of having to deal with repeated, unwanted debt collection phone calls forcing her to divert attention away from her work and other activities.

**WHEREFORE**, Plaintiff, Bridget Anders, demands judgment against Defendant as applicable in accordance with the allegations set forth above, as deemed just and lawful by the Court; plus, on each claim, litigation costs, interest, reasonable attorney fees, and any and all other legal and equitable relief this Honorable Court deems just and lawful and as follows:

**PRAYER FOR RELIEF**

1. On the first claim for violation of the Fair Debt Collection Practices Act, compensatory damages to compensate Bridget Anders for her actual damages, statutory damages up to $1,000.00 per violation, including litigation costs, interest, attorney fees as deemed proper and lawful by the Court, and any and all other legal and equitable relief this Court deems just and lawful for each violation that may be proven at trial; and

2. On the second claim, for violation of the Telephone Consumer Protection Act, an award of actual damages, statutory damages for Plaintiff in the amount of $500.00 for each and every call that violated the TCPA, and an award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff for each and every call that violated the TCPA;

Plus, for each claim, interest and all other legal and equitable relief deemed necessary and just.

**JURY DEMAND**

Plaintiff demands a trial by jury composed of the maximum number of jurors permitted by law.

Respectfully submitted,

WELLS LAW OFFICE, INC.

BY: /s/ *Amy L. Wells*
AMY L. WELLS (ARDC #6316452)
Counsel for Plaintiff
122 South Michigan Avenue, Suite 1390-145
Chicago, Illinois 60603-6036
(773) 762-9104
amywellls@equaljusticelaw.com

8